Opinion
Linda Anderson-Melton appeals from her conviction in the Montgomery County Common Pleas Court of two counts of possession of crack cocaine, receiving stolen property (motor vehicle), possession of criminal tools, illegal use of food stamps, and insurance fraud over $500.00.
Appellant's sole assignment of error reads as follows:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT IN SENTENCING APPELLANT TO SERVE AN ACTUAL TERM OF IMPRISONMENT WHERE APPELLANT HAD NO PRIOR CRIMINAL RECORD, APPLICATION OF R.C. 2929.13 FAVORED IMPOSING COMMUNITY CONTROL SANCTIONS AND WHERE THE COURT FAILED TO SPECIFY WHICH FACTORS IN R.C. 2929.13(B) APPLIED TO APPELLANT'S CIRCUMSTANCES.
The appellant's convictions resulted from her guilty pleas to all the charges except insurance fraud to which she entered a no contest plea. Prior to sentencing, the trial court considered a pre-sentence report prepared by the Montgomery County Probation Department.
At the time of sentencing, Ms. Anderson-Melton was forty-four years of age. She was the mother of three children, ages 3, 13 and 21 years of age. She was unemployed and drug dependent with no prior criminal record. The facts surrounding her convictions are set out in the pre-sentence report:
 The investigation of the instant offense was conducted by Detective Clymer, Mark Barnhart, Special Agent with the U.S. Department of Agriculture, and Det. J.G.Brun of the Moraine Police Department. At the time of the investigation, Linda Anderson-Melton was allegedly the mistress of Ronald Collier and reportedly allowed Mr. Collier to use her house to further his criminal activities. On several occasions during surveillance, Ms. Melton was observed taking part in assisting in furthering criminal acts at her residence. On several occasions, stolen automobiles were taken to her residence with her knowledge, and dismantled by Ronald Collier. The parts from these "chopped" automobiles were stored in the defendant's garage, basement and back yard. These parts were later sold or placed on other stolen vehicles possessed by Ronald Collier. Regarding Ms. Melton's conviction for Insurance Fraud and Illegal Use of Food Stamps, the defendant gave her 1997 Chevrolet truck to undercover officers in exchange for $2,000 in Food Stamps. She then reported her truck as stolen to the Trotwood Police Department and filed a claim with her insurance company. The defendant valued her truck at $24,000.
 During the execution of search warrants at her residence, officers found Food Stamps, cocaine and crack cocaine, drug paraphernalia, and a loaded sawed-off shot gun. When officers entered the defendant's residence, she was seen smoking crack cocaine from a glass pipe. Although she initially denied a drug problem, she has subsequently admitted her dependency and has requested treatment.
 According to Detective Clymer, Linda Anderson-Melton has portrayed herself as a victim of Ronald Collier. Throughout the investigative process, she refused to accept responsibility for her actions and her involvement in the criminal conspiracy. Investigating officers refused to accept this defense, based on her numerous criminal acts and the fact that these acts occurred before and after Ronald Collier entered her life. All three principal investigating officers are unanimous in their recommendation that Linda Anderson-Melton be incarcerated at the Ohio Reformatory for Women (ORW) as a result of her participation in the instant offense.
 In the Presentence Investigation interview, Linda Anderson-Melton denies her guilt in all charges for which she was convicted, with the exclusion of the Possession of Cocaine offense. The defendant admits to having a relationship with Ronald Collier, and stated that she merely allowed Mr. Collier to use her garage to work on his vehicles. She claims she had no knowledge of Mr. Collier using her facilities as a "chop shop." The defendant alleges that Mr. Collier stole her truck without her knowledge and that it was Mr. Collier who submitted a false insurance claim. Further, the defendant stated that she has no idea how Food Stamps in excess of $2,000 came to be found on her kitchen table. Ms. Melton was persistent in her claim that she was a victim of Ronald Collier during the committal of the instant offense.
On September 4, 1998, the trial court sentenced appellant to serve eleven months for insurance fraud; to serve twelve months for receiving stolen property (motor vehicle), with this sentence consecutive to the sentence for insurance fraud; to serve twelve months for illegal use of food stamps, with this sentence consecutive to the sentences for insurance fraud and receiving stolen property. (Tr. 40). The trial court also sentenced appellant to serve six months on the charges of possession of crack cocaine and possession of criminal tools, with these sentences to be served concurrently with the sentences on the first three charges. (Tr. 40).
In imposing the sentences, the trial court stated it had carefully considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12.
Appellant contends the trial court erred in sentencing her to an actual term of imprisonment when she was only convicted of fourth and fifth degree felonies, when she had no prior criminal record, and where the trial court failed to make a specific determination that the factors enumerated in R.C. 2929.13(B)(1) applied to her case.
R.C. 2929.13(B) provides in relevant part:
 (B)(1) Except as provided in division (B)(2), (E), (F) or (G) of this section, in sentencing and offender for a felony of the fourth or fifth degree, the sentencing court shall consider whether any of the following apply:
. . . .
 (e) The offender committed the offense for hire or as part of an organized criminal activity.
. . . .
(g) The offender previously served a prison term.
 (h) The offender was previously subject to a community control sanction and the offender committed another offense while under the sanction.
 (2)(a) Except as provided in division (E)(F) or (G) of this section, if the court makes a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), or (h) of this section and if the court, after considering the factors set forth in 2929.12 of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in 2929.11 of the Revised Code and finds that the offender is not amenable to a community control sanction, the court shall impose a community control sanction or combination of community control sanctions upon the offender.
 (b) If the court does not make a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), or (h) of this section and if the court, after considering the factors set forth in 2929.12 of the Revised Code, finds that a community control sanction or combination of community control sanctions is consistent with the purposes and principles of sentencing set forth in 2929.11 of the Revised Code, the court shall impose a community control sanction or combination of community control sanctions upon the offender. (Emphasis added).
The provisions of R.C. 2929.12(B) sets forth the following factors to consider when determining whether the offender's conduct is more serious than conduct normally constituting the offense:
 "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as a part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion."
Further, R.C. 2929.12(D) sets forth the following factors to consider when determining whether the offender is likely to commit future crimes:
 "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense.
 (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense."
In State v. Adams (1988), 37 Ohio St.3d 295,297, the Ohio Supreme Court held that a silent record raises the presumption that the trial court considered the factors contained in R.C.2929.12. We held that holding applies with equal force to R.C.2929.13. See, State v. Banks (November 1, 1993) Greene App. 92-CA-112, unreported.
Although the trial court made no specific finding that the defendant committed her offense as part of organized criminal activity under R.C. 2929.13(B)(1)(e), the trial court may have considered that factor when determining whether appellant's conduct was more serious than conduct normally constituting the offenses pursuant to R.C. 2929.12(B)(7). The information provided the trial court in the pre-sentence investigation would certainly support a conclusion that appellant was assisting a "chop shop" operation to carry out its illegal activities.
We agree with appellant that the better practice is for the trial court to explain its decision to sentence to incarceration those convicted of fourth and fifth degree felonies.
A trial court, however, has broad discretion in selecting the appropriate sentence within statutory limits, Toledo v. Reasonover(1965), 5 Ohio St.2d 22, 213 N.E.2d 179; State v. Williams (1982),7 Ohio App.3d 160, 454 N.E.2d 1334, and its decision in such matters will not be disturbed on appeal absent a showing that the court abused its discretion. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151,404 N.E.2d 144.
We cannot say the trial court abused its discretion in imposing the sentences upon the appellant. Her assignment of error is overruled. The judgment of the trial court is Affirmed.
. . . . . . . . . . .
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Johnna M. Shia
Deborah C. Arnett
Hon. David Sunderland